Messrs. *John Prince, Jun.*, of Salem, *Jairus Ware*, of Wrentham, *Isaac Adams*, of Portland, *Thomas Kittredge*, of Andover, *Luther Lawrence*, of Groton.

### BOSTON.

It is the duty of selectmen, presiding at a meeting for the choice of representatives, to give a reasonable time, before proceeding to the election, for the town to exercise its corporate right, to determine whether any and how many members shall be chosen; and if they do not allow such reasonable time, but proceed with the election, notwithstanding a motion made and seconded, as to the number to be chosen, the election is void.

THE election of Stephen Codman, Benjamin Russell, Benjamin Whitman, Charles Davis, William H. Sumner, Nathaniel Curtis, John Howe, Jonathan Loring, Benjamin Gorham, Benjamin Smith, John Cotton, Benjamin Rand, David Sears, Francis Bassett, and Enoch Silsby, members returned from the town of Boston, was controverted by John D. Howard, Jun., and others, on the ground of improper conduct on the part of the selectmen, who presided in the meeting, at which the members returned were elected.[1]

The committee on elections, at the January session, made the following report in this case[2] : —

[1] 39 J. H. 157.                    [2] Same, 190.

" A meeting of the inhabitants of the town of Boston, qualified to vote for representatives to the general court, was holden on the fourteenth day of May last past, for the purpose of electing one or more persons to represent that town in the general court, appointed to be convened and holden at Boston, on the last Wednesday of the same month of May.

The allegation in the petition is, 'that at the town-meeting of the inhabitants of the town of Boston, on Thursday, the fourteenth day of May, 1818, for the choice of representatives, a motion was then made and seconded, to choose seven representatives, instead of fifteen; the motion, though urged by the citizens present, to be put, was utterly refused to be put by the selectmen, according to law; and the number of fifteen was chosen, although there was no vote taken to choose any.'

The complaint of the petitioners is founded on an opinion of the judges of the supreme judicial court, and on several decisions of this house, 'that it is a corporate right to fix the number of representatives to be chosen, previous to making the choice.'

The committee find, that after said meeting had been opened in the usual manner, the town clerk informed the meeting, that there had not been any list of the ratable polls, in town, returned this year; but that, by the last year's return, the town was entitled to send forty-two; that their number was as great this year as the last; and they had a right to choose as many as they did the last year; and thereupon, he directed the voters to bring in their votes for one or more persons.

At this time, there were between sixty and one hundred voters in the meeting.

The evidence in support of the foregoing allegation was derived from eight witnesses, who all testified, that they were present at said meeting, when it was opened; that instantly after the direction of the town clerk to bring in votes, Mr. John D. Howard, Jun., made a motion, that only seven representatives should be chosen, which motion was seconded by Mr. Ebenezer Clough. They further testified, that they saw no votes given in, before said motion was made and seconded.

Some of the witnesses were near, and others remote from, the selectmen's box.

The selectmen refused to put the motion, one of them saying, that it had not been usual to take a question of that kind.

Two of the witnesses were Mr. Howard, who made the motion, and Mr. Clough, who seconded it.

Mr. Howard testified, that he went to the meeting with an intention to make the motion; and that, while the town clerk was reading the warrant, he communicated his intention to Mr. Clough, who agreed to second the motion. Mr. Howard also testified, that he made the motion, as soon as he could speak, after the town clerk had directed the voters to bring in their votes; and that he was standing, at the time, on the floor of the house, about ten feet from the selectmen's box, at the south-west corner thereof.

The evidence against the allegation in the petition was derived from nine witnesses, four of whom were selectmen, the town clerk, one of the constables, and three of the voters. The four selectmen, the town clerk, and the constable, all testified, that they heard the motion made and seconded; two of the selectmen thought the motion was made by Mr. Clough; the other two selectmen and the constable testified, that the motion was made by Mr. Howard. One of the selectmen testified, that he was positive that there were votes in his ballot box at the time the motion was made; he thinks there were from fifteen to twenty. One other of the selectmen testified, that he heard the motion made and seconded, and that he immediately stated, that it was not customary to take a question of that kind in the meeting; that when he heard the motion seconded, he turned and saw votes in Mr. Lovering's box; he thought there were from five to ten votes in the box; he did not recollect seeing more than one box extended at the time to receive votes; he thinks there was sufficient time, after the town clerk called for votes, for fifty persons to have voted, and to have gone out to the stairs.

One other of the selectmen testified, that instantly after the direction aforesaid was given by the town clerk, the four junior

selectmen extended their boxes to receive votes, they having their boxes in their hands while the town clerk was speaking; and that no votes were received, except in one box, before he heard the motion. He also testified, that in his opinion, the motion could not have been made, with propriety, sooner than it was after the meeting was opened. Two of the selectmen testified, that the reason for not putting the motion was, because there were votes given in before the motion was made, and this reason for their refusal to put it was then stated to the meeting. Two of the selectmen, and the town clerk, and the constable, were of opinion, that it was from two to three minutes, after the town clerk had called for the votes, before the motion was made.

The three other witnesses testified, that they were in the hall, at some distance from the selectmen's box, at the time the town clerk gave the direction to bring in votes for one or more; that they approached to the north corner of the selectmen's box, and put their votes into Mr. Lovering's box, and retired from the hall; but did not hear the motion. One of them stated, that if the motion had been made in half a minute after he voted, he could not have heard it, as he was out of the hall. Another stated, that he did not hear it, although he staid in the hall a minute after he had voted.

It was satisfactorily proved to the committee, that there were no votes in any of the ballot boxes, excepting the one held by Mr. Lovering, until after the selectmen had decided and stated that the motion aforesaid could not be put; and that the course pursued by the selectmen, in receiving votes at this meeting, was the same as has been practised for many years past, and that it had been usual in said town, at such meetings, to have a motion made to fix the number of representatives, previous to making the choice. The committee were also satisfied, from the evidence, that instantly after the direction aforesaid of the town clerk, there was some noise occasioned by the voters pressing to put in their votes. It further appeared, that when the motion was decided not to be put, there were no persons present at the meeting, for the

purpose of checking the list of voters, as the votes were put in. It also appeared, that the meeting was orderly, and that the whole number of votes given in for representatives was seven hundred and ninety-six, and that the sitting members had each six hundred and twelve votes.

The question to be decided on the foregoing facts is, whether it was the duty of the selectmen to submit the motion to send seven representatives, made as aforesaid, to the meeting? If it was their duty to have done so, the election was void.

It is difficult, from the conflicting evidence in this case, to determine the precise time when the motion was made, in reference to the commencement of the voting. It is apparent, however, to the committee, that the direction of the town clerk to the voters, to bring in their votes, the presentation of the ballot boxes by the selectmen, to receive the votes, and the commencement of the voting, followed in such rapid succession as to be nearly simultaneous, so that no time intervened, in which the motion could have been made and seconded, previous to the commencement of the balloting.

As the right of determining the number of representatives is a corporate right, to be exercised previous to making the choice, it was the duty of the selectmen to have given a reasonable time for the exercise of that right. The selectmen having, in this case, adopted the usage of the town, for many years, as their guide, instead of the decisions of the house, in regulating the meeting, did not give a reasonable time for the motion to be made and decided, previous to the commencement of the balloting.

It is, therefore, the opinion of the committee, that the motion was made in a reasonable time, and that it was the duty of the selectmen to have put the motion, so that the meeting might have determined the number to be chosen, before the choice should be made.

The committee, therefore, report, that the supposed election of representatives, for the town of Boston, is illegal and void; and that the said Stephen Codman, Benjamin Russell, Benjamin Whitman, Charles Davis, William H. Sumner, Nath-

29

aniel Curtis, John Howe, Jonathan Loring, Benjamin Gorham, Benjamin Smith, John Cotton, Benjamin Rand, David Sears, Francis Bassett, and Enoch Silsby, are not entitled to seats in this house."

The report was considered, and debated at length, and agreed to on the twenty-eighth of January, by a vote of 101 yeas to 22 nays.[1]

It was then ordered, that the committee on the pay roll be directed to make up the pay of the members from Boston, to the day of the adoption of the report.[2]